CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 07 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LLOYD B. COLE, | ) |
| Plaintiff, | ) Case No. 7:16-cv-00419 |
| v. | ) |
| WAL-MART STORES, INC., | ) By: Michael F. Urbanski |
| Defendant. | ) Chief U. S. District Judge |

## MEMORANDUM OPINION

In this premises liability case, plaintiff Lloyd B. Cole sued defendant Wal-Mart Stores, Inc., alleging that he slipped on a wet floor mat when entering a Wal-Mart Tire & Lube Express in Fairlawn, Virginia. Cole alleges that water had pooled under the floor mat, causing it to slide when he stepped on it. Defendant Wal-Mart moved for summary judgment, arguing that there is no evidence from which a reasonable jury could find that a hazard existed or that Wal-Mart had actual or constructive notice of the water underneath the mat, causing it to slip. Mot. Summ. J., ECF No. 25. Cole moved the court to deny Wal-Mart's summary judgment motion, ECF No. 31, and the matter has been fully briefed and argued.

Because Cole has presented no evidence that Wal-Mart knew or should have known that water had pooled under the floor mat causing it to slide, the court is required to **GRANT** Wal-Mart's motion for summary judgment, **DENY** Cole's motion in opposition, and dismiss this case.

1

# I.

The facts of this case are largely undisputed. As Cole entered the Wal-Mart tire store, he stepped on a floor mat which slid beneath him. Cole lost his balance and nearly fell, injuring his back. Cole was accompanied by his grandson, Gavin Swinney, who testified that he "saw him walking in and I saw the rug like shrivel up and him slide a little bit and catch himself." Dep. of Gavin S. Swinney, ECF No. 26-3, at 8. Cole notified Shannon Perkins, a Wal-Mart employee, who pushed the mat with his foot, also causing it to slide. When the mat was lifted, a puddle of water was revealed underneath. Neither Cole nor his grandson saw any water inside the store or around the mat until it was lifted up. Swinney Dep., ECF No. 26-3, at 9-11. Cole testified as follows:

> Q. When you first came in and you stepped on the mat and you said it slipped right away, did you notice any water or liquid substance that was visible to anybody?
>
> A. No, sir, there was no water or anything that was visible before I stepped on it that was visible to me, nor was there any visible when Shannon and I came back out, nor was there any visible after he stepped on it. There was no water visible until he picked the mat up.

Dep. of Lloyd B. Cole, ECF No. 26-1, at 51-52.

Cole testified that it had rained on and off for a couple of days, but the Wal-Mart parking lot was "[d]ry as a bone." Id. at 41. Cole's grandson testified that the weather was sunny and basically dry, but there was water in a few potholes and crevices in the parking lot. Swinney Dep., ECF No. 26-3, at 7. Wal-Mart did not counter Cole's evidence regarding recent rain and the condition of the parking lot, and neither party offered any climatological data regarding the amount of rainfall in the preceding days.

In opposition to the motion for summary judgment, Cole provided a signed affidavit from former Wal-Mart employee Jacob Whiting and an unsigned affidavit from former Wal-Mart employee Shannon Perkins. Wal-Mart moved to strike the unsigned Perkins affidavit and presented its own signed Whiting declaration. Although both Perkins and Whiting had executed Wal-Mart form witness statements in the days after the incident, neither of them were deposed.

In his executed September 11, 2017 affidavit, Whiting averred that he was familiar with the area where Cole slipped and that "sometimes rain would come in under the door during a heavy rainfall." Aff. of Jason Whiting, ECF No. 40, ¶ 3. Whiting further averred that on such occasions he put wet floor signs up "in that entrance hallway due to the rain getting . . . the mats wet and rain coming in under the door," that he "had knowledge of the mats at that doorway becoming wet due to rainfall," and that he "had cleaned the rugs many times with either a vacuum or broom by the entrance doorway where this accident happened." Id. at ¶¶ 4-6. Whiting averred that his manager Shannon Perkins asked him to clean up the water after the Cole incident, which he did. Id. at ¶ 7.

Eight days later, on September 19, 2017, Wal-Mart filed a dueling Whiting declaration, ostensibly for the purpose of "clarifying the facts set forth in my Affidavit signed September 11, 2017." Decl. of Jason Ray Whiting, ECF No. 42-1, ¶ 2. Whiting explained that he was aware that rain water would come in the tire store door or be tracked in by customers, and it would be cleaned up as necessary. Whiting declared that he had "no recollection of the last time this may have happened prior to the plaintiff's incident," and that it "certainly was not an on-going issue or problem." Id. at ¶ 3. Whiting explained that

3

the store would place Wet Floor signs and floor mats on rainy days and cleaned the mats as needed. Whiting likewise stated that water-dampened floor mats were "not an on-going issue or problem." Id. at ¶ 5. Whiting denied having any knowledge that the floor mat in question was damp prior to Cole's incident, had no information that water underneath a floor mat could cause it to slip or slide and "had never seen it happen before." Id. at ¶¶ 9-10. Whiting explained that he had "no knowledge or information how water may have gotten under the mat, why there was water under the mat or how long water had been under the mat prior to the plaintiff's incident." Id. at ¶ 11.

In support of his claim, Cole also offered written witness statements authored by Whiting and Perkins a few days after the episode. While both describe finding water under the floor mat after the fact, neither statement contains any facts supporting actual or constructive notice to Wal-Mart that water had pooled under the floor mat causing a sliding hazard. See Perkins and Whiting Witness Statements, ECF No. 31, at 10-11.[1]

## II.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the facts and the inferences to be drawn from them in the light most

---

[1] Cole also offered an unsigned affidavit from Shannon Perkins. ECF No. 40. Plainly, an unexecuted affidavit lacks sufficient evidentiary foundation to be considered. Roberts v. Wal-Mart Stores, Inc., No. 95-0058-H, 1997 WL 38138 (W.D. Va. Jan. 28, 1997). As such, Wal-Mart's motion to strike the unsigned affidavit is GRANTED. ECF No. 41. Even if considered, however, the unsigned affidavit does not establish actual or constructive notice on the part of Wal-Mart as to the hazard posed by the water under the floor mat. Paragraph 4 of the putative Perkins affidavit avers that he was aware that floor mats could become wet due to rainfall and that he had instructed employees to lean the mats up to dry off. Signed or not, nothing in the Perkins affidavit suggests that Wal-Mart had knowledge, actual or constructive, that water had pooled under the floor mat prior to the Cole incident or that water under a floor mat could cause the sliding hazard alleged in this case.

favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The court must not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

The moving party has the initial burden of pointing out to the court the deficiency in the non-movant's case that would make it impossible for a reasonable fact-finder to return a verdict in the non-movant's favor. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A movant-defendant may show that he is entitled to judgment as a matter of law by demonstrating that the plaintiff could not prove an essential element of his case. Id. at 322–23. It is then up to the nonmovant to demonstrate to the court that there are genuine issues of material fact and that he has made a sufficient showing on each of the essential elements of his case. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008); Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Therefore, summary judgment is appropriate when the moving party points out a lack of evidence to support an essential element of his claim. See Blair v. Collonas Shipyards Inc., 52 F.Supp.2d 687, 692 (E.D.Va. 1999), aff'd, 203 F.3d 819 (4th Cir. 2000).

## III.

In Virginia, a store owner owes its customers a duty to exercise ordinary care towards them when they are visiting the premises.[2] Winn–Dixie Stores, Inc. v. Parker, 240 Va. 180, 182, 396 S.E.2d 649, 650 (1990) (citing Colonial Stores v. Pulley, 203 Va. 535, 537, 125 S.E.2d 188, 190 (1962)); see generally Atrium Unit Owners Ass'n v. King, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003) (stating that in order to establish actionable negligence, Virginia law requires a plaintiff to show "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage"). Discharging this duty requires a store owner:

> [T]o have the premises in a reasonably safe condition for [a customer's] visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the [customer] of of the unsafe condition if it was unknown to [the customer], but was, or should have been, known to the [store owner].

Colonial Stores, 203 Va. at 537, 125 S.E.2d at 190; see also Winn–Dixie, 240 Va. at 182, 396 S.E.2d at 650.

Where a store owner's affirmative conduct is alleged to be the cause of an unsafe condition, Virginia courts impute notice to the owner if the danger was reasonably foreseeable. For example, in Memco Stores, Inc. v. Yeatman, 232 Va. 50, 55, 348 S.E.2d 228, 231 (1986), plaintiff slipped and fell on a green slimy substance determined to be a plant leaf that had fallen near a furniture display in defendant's store. Id. at 51, 348 S.E.2d at 229. Evidence adduced at trial supported the theory that the plant was taken from a patio and placed near the edge of a furniture display by defendant's employees, and that a leaf fell to

---

[2] As federal jurisdiction in this case is based on diversity of citizenship, Virginia substantive law controls. Erie R.R.Co. v. Tompkins, 304 U.S. 64, 78-79 (1938).

6

the floor, causing plaintiff to slip. Id. at 53–54, 348 S.E.2d at 230. The court held that "[i]f an ordinarily prudent person, given the facts and circumstances Memco knew or should have known, could have foreseen the risk of danger resulting from such circumstances, Memco had a duty to exercise reasonable care to avoid the genesis of the danger." Id. at 55, 348 S.E.2d at 231.

However, courts have rejected Yeatman's foreseeability standard where a defendant's conduct was merely "passive." Ashby v. Faison & Assocs., Inc., 247 Va. 166, 170, 440 S.E.2d 603, 605 (1994). In Ashby, the court characterized as "passive conduct" defendants' failure to remove or warn the plaintiff of water tracked into the lobby of an office building by a third party on a rainy day. Id. at 169–70, 440 S.E.2d at 605. The Ashby court distinguished the facts from the situation in Yeatman, in which the hazardous condition on the floor resulted from the defendant's affirmative conduct of moving a plant from the patio to the furniture display. Id. at 169, 440 S.E.2d at 605. Unlike Yeatman, there was no affirmative conduct in Ashby. Rather, plaintiff's theory was that a "third person entering the building either tracked water into the lobby or shook it from an umbrella and that the defendants' conduct in failing to remove the water or to warn her of its presence caused her injury." Ashby, 247 Va. at 169–70, 440 S.E.2d at 605. Under these circumstances, the court held that the appropriate standard is "whether the defendants had actual or constructive notice, that is, whether they knew or should have known, of the presence of the [hazardous condition] that caused [plaintiff's] fall and failed to remove it within a reasonable time or to warn of its presence." Id. at 170, 440 S.E.2d at 605; Turley v. Costco Wholesale Corp., 220 F. App'x 179, 181 (4th Cir. 2007) ("When, as here, the dangerous condition resulted from

7

passive conduct, the plaintiff may prevail only if he shows that 'defendants had actual or constructive notice' of the dangerous condition." (quoting Ashby, 247 Va. at 170, 440 S.E.2d at 605)); Winn–Dixie, 240 Va. at 184, 396 S.E.2d at 651 (holding because plaintiff failed to establish affirmative conduct on the part of the defendant, it became his burden to prove defendant had either actual or constructive notice of the hazardous condition and failed to remove it).

## IV.

While a jury questions exists as to whether the slippery floor mat constituted an unreasonably unsafe condition, no evidence exists that Wal-Mart knew or should have known of the slip hazard. As such, the court is required to grant Wal-Mart's motion for summary judgment for failure to prove that it had actual or constructive notice of the slippery floor mat.

## A.

Wal-Mart first argues that the slippery floor mat posed no hazard as to which a reasonable jury could return a verdict for Cole. As to the issue of the existence of a hazard, the court disagrees. Cole testified that it had rained on and off for days before his fall and that the floor mat inside the door to the tire store was so saturated with water that it pooled underneath it, causing it to slip. The fact that the floor mat was slippery due to the water found underneath it is not disputed. Both Cole and his grandson testified that the mat slipped when he stepped on it and that water was found underneath the mat. Viewed in the light most favorable to Cole, the evidence establishes that the sliding floor mat posed a hazard causing Cole to slip when he stepped on it. See Turley v. Costco Wholesale Corp.,

No. 1:05cv518, 2006 WL 306646, at *2 (E.D. Va. Feb. 6, 2006)("Taken as a whole and in the light most favorable to Plaintiff, Turley's testimony was that snow, ice or water caused his fall.").

In this regard, the case is distinguishable from Ashby, where the Virginia Supreme Court rejected the allegation that defendants were negligent by failing to inspect a rain soaked floor mat, concluding that "there was no evidence to show that the soaked condition of the mat contributed in any way to Ashby's fall." 247 Va. at 171, 440 S.E. 2d at 606. Here, in contrast, the testimony of Cole and his grandson establishes that the water pooling under the floor mat caused it to slide. Unlike in Ashby, here there is sufficient evidence from which a reasonable jury could conclude that the slippery floor mat constituted an unsafe condition causing plaintiff to slip and catch himself, injuring his back. As a result, the court must next consider the issue of Wal-Mart's actual or constructive notice of the hazard.

## B.

On the issue of actual notice of the hazard posed by the slippery mat, the court agrees with Wal-Mart. No evidence has been introduced that Wal-Mart had actual notice of the hazard posed by the slippery floor mat. Both Cole and his grandson testified that no water was visible on the floor inside the store or around the floor mat, and that water was only seen once the mat was lifted. Cole Dep., ECF No. 26-1, at 51-52; Swinney Dep., ECF No. 26-3, at 9-11. There is, in short, no evidence that anyone knew that water was present under the floor mat or that it was slippery prior to the Cole incident. As such, summary judgment turns on whether there is sufficient evidence from which a reasonable jury could find that Wal-Mart was on constructive notice of the hazard.

9

## C.

In premises liability cases such as this one, where the defendant neither created nor had actual knowledge of the defect, "the applicable standard is whether the defendant[ ] had constructive knowledge or notice, that is, whether they knew or should have known, of the presence of the water that caused [Cole to slip] and failed to remove it within a reasonable time or warn of its presence." Ashby, 247 Va. at 170, 440 S.E.2d at 605. Stated another way, "constructive knowledge or notice of a defective condition of a premise or a fixture may be shown by evidence that the defect was noticeable and had existed for enough time to charge its possessor with notice of its defective condition." Grim v. Rahe, Inc., 246 Va. 239, 242, 434 S.E.2d 888, 890 (1993), see also Hodge v. Wal–Mart Stores, Inc., 360 F.3d 446, 454 (4th Cir. 2004) (finding that in order to prove constructive notice, the plaintiff had to prove when that afternoon the specific unsafe condition developed). "[I]f the evidence fails to show when a defect occurred on the premises, the plaintiff has not made out a prima facie case [of negligence]." Grim, 246 Va. at 242, 434 S.E.2d at 890 (emphasis in original) (citing Winn–Dixie, 240 Va. at 184, 396 S.E.2d at 651); see also Abbott v. Kroger Co., 20 F. App'x 201, 201–02 (4th Cir. 2001)("[E]vidence regarding when a defect such as a spill occurred is part of the prima facie case for negligence.").

This standard has been applied in a number of Virginia premises liability cases, such as this one, involving hazards caused by inclement weather. In Cannon v. Clarke, 209 Va. 708, 167 S.E.2d 352 (1969), the Virginia Supreme Court reversed a jury verdict for a plaintiff who fell in snowy conditions on defendant's porch, holding as follows:

> [I]n order to hold the owner of property liable for injuries sustained by an invitee due to the unsafe condition of the

10

> premises, it must be shown that the owner had knowledge of the alleged unsafe condition, or that it had existed for such a length of time as to make it the owner's duty in the exercise of ordinary care to have discovered it. Miracle Mart, Inc. v. Webb, 205 Va. 449, 453, 137 S.E.2d 887, 890 (1964); Culpepper v. Neff, 204 Va. 800, 804, 134 S.E.2d 315, 318, 319 (1964). Here these essentials are lacking with respect to the alleged presence of snow or ice on the porch. There is no showing that the defendants, or either of them, knew of such condition or that it had existed for such a length of time that in the exercise of ordinary care they should have known of it. Indeed, there is an entire of lack of evidence as to how long the snow or ice, if any, had been there.

209 Va. at 712, 167 S.E.2d at 355.

Ann Ashby sued after falling in the vestibule of a Richmond office building during rainy conditions. After walking the length of a rain soaked floor mat, Ashby slipped and fell in puddles of water that had gathered on the marble floor. The Circuit Court for the City of Richmond set aside the jury verdict for Ashby, and the Virginia Supreme Court affirmed because there was no evidence "that the condition had lasted long enough that the defendants should have known of its existence in time to remove it or warn Ashby of the danger." Ashby, 277 Va. at 170, 440 S.E.2d at 605.

The Turley decision, out of the Eastern District of Virginia, also is instructive. Turley v. Costco Wholesale Corp., No. 1:05cv518, 2006 WL 306646 (E.D. Va. Feb. 6, 2006). The district court granted summary judgment for defendant Costco in a case arising out of a slip and fall in the vestibule of defendant's store under snowy conditions, noting "[t]here is nothing to suggest that Costco actually knew of the dangerous condition in the vestibule or that wet conditions in the vestibule long enough that the defendant should have known of

its existence in time to remedy it." Id. at *4. The Fourth Circuit Court of Appeals affirmed, concluding as follows:

> Turley argues that the hazard must have been present in the vestibule "more than long enough for Costco to appreciate the danger." Appellants Br. at 20. Because wet weather conditions had persisted for several days, he infers that the hazard must likewise have existed for a sufficient time such that Costco should have discovered it, and that [the Costco manager's] inspection of the vestibule just prior to the accident should have revealed the hazard.
>
> Turley's argument fails under Virginia precedent. The Cannon court found the plaintiff's case doomed by the fact that "there is an entire lack of evidence as to how long the snow or ice, if any, had been there." 167 S.E.2d at 255. Similarly, a plaintiff who slipped and fell in an office building lobby could not prevail without "showing that the . . . hazardous condition . . . had existed long enough that the defendants should have known of its existence in time to remove it or to warn [the plaintiff] of the danger." Ashby, 440 S.E.2d at 605.

220 F. App'x at 182.

The Western District of Virginia followed suit in Logan v. Boddie-Noell Enterprises, Inc., No. 4:11cv0008, 2012 WL 135284 (W.D. Va. Jan. 18, 2012). Bernadette Logan fell on water which had accumulated inside the door of a Hardee's restaurant in Danville during a snowstorm. Logan argued that Hardee's had constructive notice of its wet floor from the fact that it had placed salt and sand in the parking lot and directly outside the entrance to the restaurant. Relying on Ashby, the Logan court disagreed, holding that "the plaintiff must show constructive notice of the actual defect that caused the plaintiff's accident, not merely outside conditions that could forseeably cause such a defect." Id. at *7. The Logan court explained:

12

> [T]he guiding factor in determining whether the owner had constructive notice is the length of time that the condition existed. Accordingly, Ashby appears to stand for the rule that mere notice of weather conditions that could forseeably cause the unsafe condition is insufficient to establish constructive notice of the unsafe condition itself. Rather, the owner must have notice of the particularized defect that actually causes the plaintiff's injury. General knowledge of potential peril is insufficient. To allow Plaintiff to establish notice based on Boddie-Noell's awareness of the snowy conditions outside the restaurant would effectively undermine the distinction between the standards applicable to defects caused by the premises owner's affirmative conduct and those caused by passive conduct. Accordingly, Plaintiff's argument that the severe weather could provide constructive notice is misplaced.

Id.

In Adkison v. Frizzell, No. 1:11cv00089, 2012 WL 4127617 (W.D. Va. Aug. 14, 2012), plaintiff claimed that a shopping center operator had constructive notice of an ice patch in its parking lot from the fact of a snow storm the previous night. The Adkison court disagreed, reasoning as follows:

> [T]he mere fact that there was inclement weather the night before Adkison's fall is insufficient to establish constructive notice of ice in the parking lot. Although awareness of severe weather conditions might render the unsafe condition forseeable, it is insufficient proof of notice for purposes of premises liability. Instead, Adkison must show that Frizell had "constructive notice of the specific unsafe condition that injured [him]", — namely, patches of ice like the one he slipped on. Adkison fails to supply any such evidence here. The only admissible fact submitted on the issue of notice is that there was a snow storm the night before the incident. Such evidence is insufficient to survive summary judgment.

Id. at *3 (citing Logan, 2012 WL 135284, at *6-7; and quoting Hodge, 360 F.3d at 453-54).

As these cases teach, Cole cannot meet his burden of proving constructive notice of the hazard posed by the slippery floor mat simply from the fact that it had rained in recent

13

days and had dried out to some extent. To do so would require the jury to speculate as to how the water came to be present under the floor mat and how long it had been there. "Virginia law does not allow speculation on the issue." Abbott, 20 F. App'x at 201-02. In Logan, for instance, plaintiff argued that the jury should be able to find constructive notice from "the large quantity and area of the water, suggesting that the water must have accumulated over a significant period of time." Id. at *8. The court disagreed, concluding that "[w]ithout any specific evidence as to precisely how the water got on the floor, however, such an abstract hypothesis constitutes mere speculation." Id.

Likewise, in Turley, the Fourth Circuit noted that "Turley has offered no evidence to suggest that the water had been pooling in front of the carts so long that Costco should have discovered it. Instead, he asks the court to speculate as to how long the water hazard had existed prior to his fall. However, such 'unsupported speculation . . . . is not sufficient to defeat a summary judgment motion.'" 220 F. App'x at 182 (quoting Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)). The same is true here.[3]

## IV.

Considering the record as a whole and drawing all inferences in the light most favorable to Cole, a reasonable jury could not find that Wal-Mart knew or should have known of the condition which caused plaintiff to slip. While the sliding floor mat posed a hazard to Wal-Mart's customers entering the store, there is no evidence from which a

---

[3] Nor may Cole meet his burden under established Virginia premises law by pointing to Wal-Mart internal guidelines for handling inclement weather, requiring its stores to "[r]eplace mats before they become saturated," and to "[u]se a Shop Vac for water-saturated carpets and mats." Wal-Mart Inclement Weather Guidelines, ECF No. 31, Ex. 1, at 9. "Virginia law has long held that 'a person cannot, by the adoption of private rules, fix the standard of his duties to others.'" Elliott v. Food Lion, LLC, No. 1:12cv1426, 2014 WL 1404562 (E.D. Va. April 10, 2014), (quoting Hottle v. Beach Aircraft Corp., 47 F.3d 106, 110 (4th Cir. 1995), and Virginia Ry. & Power Co. v. Godsey, 117 Va. 167, 83 S.E. 1072 (1915)).

14

reasonable jury could conclude that Wal-Mart had actual or constructive notice that the floor mat was slippery or that there was any water under it. Given the lack of any such evidence, Cole cannot demonstrate that the circumstances surrounding his slip triggered a duty on the part of Wal-Mart to warn against or remedy the unsafe condition. Thus Cole has not made out a prima facie case of negligence as a matter of law. Accordingly, Wal-Mart's Motion for Summary Judgment, ECF No. 25, is **GRANTED**, and Cole's Motion to Deny Summary Judgment, ECF No. 31, is **DENIED**.

The Clerk is directed to strike this case from the active docket of the court and to send copies of this Memorandum Opinion and accompanying Order to all counsel of record.

ENTER: This 7th day of November, 2017.

/s/ Michael F. Urbanski
Chief United States District Judge